UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DEWAYNE NASH                                CASE NO. 3:20-CV-00273

VERSUS                                      JUDGE TERRY A. DOUGHTY

JAMES CARL BADGETT, ET AL.                  MAG. JUDGE KAREN L. HAYES

RULING

Pending here is a Motion for Summary Judgment filed by Defendants James Carl Badgett ("Badgett"), Texas Intrastate Carriers, Inc. ("Texas Intrastate"), and Southern County Mutual Insurance Company ("Southern County") (collectively, "Defendants") [Doc. No. 19].  Plaintiff Dwayne Nash ("Nash") has filed an opposition [Doc. No. 27].

For the following reasons, Defendants' Motion for Summary Judgment is DENIED.

I.      FACTS AND PROCEDURAL HISTORY

This lawsuit arises from an accident which occurred in Ouachita Parish, Louisiana, on the evening of February 4, 2019.  Nash was operating a Ford Taurus traveling eastbound in the outside lane of Interstate 20 at a speed of 21 miles per hour ("mph") when his vehicle was rear-ended by a Peterbilt tractor/trailer operated by Defendant Badgett.

On January 28, 2020, Nash filed suit in the Fourth Judicial District Court for Ouachita Parish, Louisiana, for the damages he sustained in the accident. Named as defendants were Badgett, Texas Intrastate as the employer of Badgett and as the owner of the tractor/trailer, and Southern County as the insurer of the tractor/trailer.  On March 3, 2020, Defendants removed the case to this Court.

Defendants contend they are entitled to judgment as a matter of law dismissing Nash's claims because Nash has no evidence of any substandard conduct or breach of duty on the part of Badgett.  Defendants contend that Badgett was operating the tractor/trailer at the posted 70 mph speed limit when he suddenly came upon a hazard, i.e., a slow-moving Taurus impeding the flow of interstate travel, moving about 50 mph below the speed limit.  Defendants further contend that Nash was solely at fault for operating the Taurus with a spare "donut" tire that had separated, instead of pulling the Taurus off onto the shoulder.

Nash, on the other hand, contends that Badgett was at fault for not maintaining a proper lookout, for driving the tractor/trailer in a reckless manner, and for traveling at an excessive speed.

The issues are fully briefed, and the Court is prepared to rule.

## II.     LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), A[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@ The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) (AA party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is Amaterial@ if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson*

2

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is Agenuine@ if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

## B. Analysis

### 1. Defendants' Contentions

Defendants seek summary judgment on the grounds that Nash cannot prove an essential element of his claim because there is no evidence of any substandard conduct or breach of duty on the part of Badgett.  They assert that the physical evidence and the computer downloads of both vehicles demonstrate that Badgett was operating the tractor/trailer at the posted speed limit when he came upon Nash's slow-moving Taurus impeding the flow of Interstate travel.

Defendants offer the Declaration of Louisiana State Trooper George Harper ("Trooper Harper") in support of their arguments.  Trooper Harper investigated the accident and prepared the Uniform Motor Vehicle Traffic Crash Report (the "accident report") [Declaration of Trooper Harper, Doc. No. 19-5, p. 1]. Upon arrival at the crash scene, Trooper Harper observed a white Ford Taurus with moderate rear damage and a Peterbilt tractor/trailer with minor damage to the

3

front grill. [*Id*.]. Trooper Harper identified Nash as the operator of the Taurus and Badgett as the operator of the tractor/trailer. [*Id*., p. 2]. Trooper Harper interviewed Nash, who advised that he did not remember anything about the events prior to the accident. [*Id*.].

Trooper Harper also interviewed Badgett, who said he was traveling eastbound on Interstate 20 in the outside lane, that he had seen the Taurus ahead of him for approximately 5 miles, and that the Taurus operator was driving normally without any erratic driving behavior. [*Id*.].  Badgett further stated that suddenly the Taurus's brake lights came on, and he attempted to move the tractor/trailer into the left inside lane but was unable to do so because there was another vehicle in that lane, and so, instead, he abruptly braked, but was unable to avoid a collison. [*Id*.]. Badgett also stated that he thought the Taurus had fully stopped in the outside travel lane because it was moving so slowly. [*Id*.].

Trooper Harper further declared that the physical evidence showed that both vehicles were traveling in the outside eastbound travel lane of Interstate 20 when the Taurus driver applied its brakes and began abruptly coming to a stop in the outside lane. [*Id*.]. The tractor/trailer driver attempted to change lanes to avoid the Taurus but was unable. [*Id*.]. The tire marks matching the tread of the Taurus were located and show the Taurus traveled off the roadway after impact. The tractor/trailer came to rest at a controlled stop on the southern shoulder of Interstate 20. [*Id*.].

At the conclusion of his investigation, Trooper Harper found Badgett not to be at fault for the accident. [*Id*.]. Trooper Harper cited Nash for expired license, no insurance, and careless operation. [*Id*.]. The careless operation citation was based on the driver interviews and physical evidence which showed the Taurus slowed so significantly in the travel lane as to impede the flow of normal traffic on an Interstate zoned at 70 mph. [*Id*.].

In support of their motion, Defendants also offer the Affidavit of Bryan Corb ("Corb"), an Accident Reconstructionist with A & M Forensics Engineering, who conducted an investigation into the accident. [Affidavit of Bryan Corb, Doc. No. 19-6, p. 1].  An inspection of the tractor/trailer was conducted by Cobb on April 12, 2019 at the Rush Truck Center in Irving, Texas. [*Id*., p. 2]. The damage was to the front of the vehicle, consistent with the information contained within the accident report. [*Id*.]. Corb downloaded data from the tractor/trailer engine, and, according to the ECM (Electronic Control Module) data report, the commercial truck tractor ECM began recording 44 seconds prior to the crash. [*Id*.]. The data revealed that 2 seconds before the crash, the tractor/trailer was traveling at 70 mph, then the brakes were applied, and that the tractor/trailer had slowed to 50 mph at the time of impact.  [*Id*.].

On April 23, 2019, Corb traveled to T&T Towing in West Monroe, Louisiana, to conduct an inspection of the Taurus. [*Id*.]  Upon initial observation of the vehicle, damage was seen to the front left and the rear. [*Id*.]. Upon closer inspection, it was noted that the front left tire was a small, donut style, where the tread had separated. The tread appeared to have separated prior to the crash. [*Id*., p. 3].

Corby downloaded the Taurus' Airbag Control Module (ACM) during the April 23, 2019 inspection of the vehicle. [*Id*.]. The ACM data report indicated the Taurus was traveling 21.7 mph, 5 seconds prior to impact, and, was traveling at 21 mph at the time of impact. [*Id*.]

On April 26, 2019, Corb traveled to the area of Interstate 20 where the crash occurred and observed that the roadway has two lanes eastbound and two lanes westbound, separated by a grassy median. [*Id*., p. 4]. The roadway was observed to be free from visual obstructions for over 1000 feet prior to the location of impact. [*Id*.]. There is a hard asphalt surface shoulder,

approximately 8'5" in width, adjacent to the outside travel lane. Pieces of crash debris found at this location indicated this was the crash location. [*Id*., p. 5].

During the inspection of the scene on April 26, 2019, the Peterbilt tractor skid marks were located by Corb in the outside travel lane and shoulder on Interstate 20, consistent with the information contained within the accidentash report. [*Id*.]. The skid marks are an indication of perception and reaction by Badgett to the hazard of the slower moving Taurus driven by Nash. [*Id*.]. Corb found that there was no visible ambient lighting in this area. His review of photographs taken by the State Police, at the time of the crash, confirmed that the scene area is dark. [*Id*., p. 6].

Corb states that Louisiana state law prohibits a person from operating a motor vehicle upon the highways at such a slow speed as to impede the normal and reasonable movement of traffic. [*Id*., p. 7].  Corb opines that Nash, while experiencing vehicle issues with his tire, should have pulled safely off the roadway and onto the 8'5" wide shoulder. [*Id*., p. 8].  The shoulder had ample room for his vehicle and would have provided more safety for him to obtain help. Instead, Nash continued to drive at a speed that impeded the normal flow of traffic. [*Id*., pp. 8, 9].

Using data obtained from the ECM data report of the tractor/trailer, the ACM data report from the Taurus, along with information obtained during the scene inspection, Corb used the Interactive Driver Response Research software ("IDRR") to determine that Badgett did appropriately perceive and respond to the hazard of the Taurus, traveling at a slow speed. [*Id*., p. 8].  Corb concludes from his investigation that Badgett had no expectation or anticipation of a vehicle traveling 49 mph slower than the posted speed limit. [*Id*.]

Defendants conclude that there is no evidence of any substandard conduct or breach of duty on the part of Badgett. Trooper Harpter concluded his investigation and found no fault on

the part of Badgett. Corb completed his investigation and found no fault on the part of Badgett. Consequently, there is no factual basis or actual evidence to impose liability upon Badgett, who was traveling at the speed limit and reacted appropriately to attempt to avoid the hazard presented.

### 2.    Plaintiff Nash's Contentions

In opposition to Defendants' motion, Nash offers the Affidavit of his own expert, Michael S. Gillen ("Gillen"), of National Collision Technologies, Inc. [Affidavit of Michael S. Gillen, Doc. No. 27-2].  Gillen reviewed documents including the accident report, the pleadings, the ECM Download from the tractor/trailer, the CDR Download from the Taurus, Northwestern Traffic Crash Reconstruction, Site Research, Google Aerial and Street Views, Vehicle Research, NHTSA Vehicle Database, NAVO Database, and NCTI Calculations. [*Id*., p. 2].

Gillen states that the evidence and Badgett's own statement to the police indicate that Badgett did not suddenly encounter Nash ahead of him. [*Id*., p. 6]. Rather, Badgett was traveling for over 4 minutes following Nash, saw Nash's brake lights come on, and realized that Nash's Taurus was slowing ahead of him for 11 seconds. [*Id*.]. Based on the CDR data, Nash held a speed of 22 mph to 21 mph for an additional 5 seconds before the impact, for a total time of 16 seconds. In that total time, Badgett would have had sufficient time to react and to match the speed of Nash's Taurus. As a professional, commercially licensed driver, familiar with the handling characteristics of his 18-wheeler, Badgett, did not maintain a proper lookout, and, further, applied a defective driver strategy in an attempt to change lanes.  As a result, Badgett crashed into the rear of Nash's Taurus. [*Id*.].

Based on Gillen's Affidavit, Nash argues that there is a genuine issue as to material fact, and that Defendants are not entitled to judgment as a matter of law, since the contested facts present legal issues.

### 3.    Court's Analysis

Jurisdiction in this matter is based on diversity. The Court will apply Louisiana negligence law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).   Louisiana employs a duty-risk analysis in determining liability for negligence. *Bufkin v. Felipe's Louisiana, LLC*, No. 2014-0288, 171 So.3d 851, 855 (La. 10/15/14).   A plaintiff must prove five elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Id*. The question of whether a duty is owed, and the scope of that duty, is a question of law. Whether there was a breach of the duty, whether the substandard conduct was the cause-in-fact and legal cause of the damages, and whether damages resulted, are questions of fact. *Teter v. Apollo Marine Specialties, Inc.*, No. 2012-1525, 115 So. 3d 590, 598 (La. App. 4 Cir. 4/10/13).

Louisiana courts have recognized the five-factor negligence inquiry presents a particularly difficult challenge at the summary judgment stage, because "a negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability."  *Hanks v. Entergy Corp.*, No. 2006-477, 944 So.3d 564, 579 (La. 12/18/06).

Under Louisiana Civil Code article 2323, in any action for damages where a person suffered injury,

> the degree or percentage of fault of all persons causing or contributing to the injury ... or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and

> regardless of the person's insolvency, ability to pay, immunity by
> statute, including but not limited to the provisions of R.S. 23:1032,
> or that the other person's identity is not known or reasonably
> ascertainable. If a person suffers injury ... the result partly of his own
> negligence and partly as a result of the fault of another person or
> persons, the amount of damages recoverable shall be reduced in
> proportion to the degree or percentage of negligence attributable to
> the person suffering the injury ... or loss.

*Id*. "Ordinarily, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment ... This principle extends to a question of comparative fault as well." *Pruitt v. Nale*, 45,483 (La. App. 2 Cir. 8/11/10), 46 So. 3d 780, 783 (citing *Freeman v. Teague*, 37, 932 (La. App. 2d Cir. 12/10/03), 862 So.2d 371; *Powers v. Tony's Auto Repair, Inc.* 98–1626 (La.App. 4th Cir.4/28/99), 733 So.2d 1215, writ denied, 99–1552 (La.7/2/99), 747 So.2d 28.). "However, where reasonable minds cannot differ, a question of comparative fault is a question of law that may be resolved by summary judgment." *Id.* (citing *Rance v. Harrison Co.*, 31,503 (La.App.2d Cir. 1/20/99), 737 So.2d 806, writ denied, 99–0778 (La.4/30/99), 743 So.2d 206.).

Summary judgment "may not be granted for purposes of determining a particular element of liability where such a determination is not completely dispositive of the question of liability between the parties concerning the claim and where other issues such as comparative fault remain unresolved." *Williams v. City of New Orleans*,  637 So. 2d 1130, 1132 (La. App. 4th Cir. 5/17/94), *writ denied*, 644 So. 2d 632 (La. 10/7/94).

On the road, drivers have a duty to maintain a proper lookout and to see what should be seen. *Davis v. Smith,* 796 So.2d 765, 769 (La. App. 2 Cir. 10/02/01) (*citing Thissel v. Commercial Union Ins. Co.,* 476 So.2d 851 (La. App. 2 Cir. 9/25/85)). A driver may assume that the road ahead is safe for travel, but when driving in darkness or circumstances of low visibility,

the driver must observe the road carefully and maintain control of his vehicle so as to avoid discernible objects in his path; that is, in adverse conditions, a greater degree of care must be exercised. *Id.*

In the instant case, Defendants assert that there is no evidence of any substandard conduct or breach of duty on the part of Badgett.  However, while Defendants argue that Badgett was safely traveling at 70 mph when he suddenly saw the slower moving Taurus ahead of him, Nash has presented summary judgment evidence that Badgett had been following Nash for approximately four minutes before he saw Nash's brake lights come on.  Nash's expert opines that Badgett had sufficient time to safely react and slow down to Nash's speed.  Instead of immediately slowing down, Badgett used a defective driver strategy to try to change lanes, and as a result, rear-ended Nash.

Further, Trooper Harper did not have access to the engine data downloads when he prepared the accident report and issued Nash citations.

The Court finds that reasonable minds could differ as to whether Badgett was at least partly at fault.  Therefore, there remain disputed issues to be determined by the finder of fact. These questions will need to be answered when applying Louisiana's "duty/risk" analysis. *See LeJeune v. Union Pacific Railroad,* 712 So.2d 491, 494 (La. 1998).

The issue of comparative fault remains unresolved.

## III.    CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment [Doc. No. 19] is **DENIED**.

**Monroe, Louisiana,** this 24th day of November, 2020.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**